IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAROLD CARE, et al., | : | CIVIL ACTION |
|     Plaintiffs | : | |
| | : | |
| v. | : | No. 03-CV-4121 |
| | : | |
| THE READING HOSPITAL AND | : | |
| MEDICAL CENTER, INC., et al., | : | |
|     Defendants | : | |

**MEMORANDUM AND ORDER**

**TIMOTHY R. RICE**
**U.S. MAGISTRATE JUDGE**                                                                 **August 31, 2006**

    Plaintiffs are seven employees in the engineering department of the Reading Hospital and Medical Center ("Hospital"). During a six-day trial in April 2006, plaintiffs argued the Hospital and defendant Jakob Olree, the Hospital's director of facilities management, violated provisions of Title III of the Omnibus Crime Control and Safe Street Acts of 1968,[1] and of Pennsylvania's

---

[1] Title 18 U.S.C. §§ 2510-2521 (the "Wiretap Act") provides, in relevant part:

(a)    Any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

(b)    Appropriate relief includes:

    1.    Statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000;
    2.    Punitive damages in appropriate cases; and
    3.    A reasonable attorney's fee and other litigation costs reasonably incurred.

Wiretapping and Electronic Surveillance Control Act.[2]  Under both statutes, each plaintiff needed to demonstrate by a preponderance of the evidence that: (1) he engaged in a communication; (2) he possessed an expectation the communication would not be intercepted; (3) his expectation was justifiable under the circumstances; and (4) defendants intercepted, disclosed, or intentionally used the communication.[3]  Plaintiffs argued Olree directed Mark Balatgek[4] to secretly tape record the private conversations of workers in the engineering department on various days in 2001 and during a meeting of these workers on January 22, 2002.

On April 19, 2006, a jury found the Hospital had violated both statutes on one occasion, i.e., the taping on January 22, 2002.  It found Olree had not violated the law.  The jury did not award punitive damages.  On May 4, 2006, I exercised my discretion to award damages to each individual plaintiff in the statutory amount of $10,000.  On the same day, the Hospital filed this

---

[2]  Similarly, 18 Pa. C.S. § 5725 ("WESCA") provides:

(a)   Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person:

   (1)   Damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher;
   (2)   Punitive damages; and
   (3)   A reasonable attorney's fee and other litigation costs reasonably incurred.

[3]  The Pennsylvania statute also prohibits a defendant from attempting to intercept any oral communications or procuring another person to do so.

[4]  Balatgek was the Hospital's maintenance manager and originally named a defendant in this action.  On December 21, 2004, the parties entered into a stipulation of dismissal as to Balatgek who filed for bankruptcy protection.  (Document #38).

motion for a new trial or, in the alternative, to amend the award of statutory damages. The Hospital argues that because Olree was exonerated, the verdict is against the great weight of the evidence, constitutes a miscarriage of justice, and shocks the conscience. The Hospital does not contest the propriety of the jury charge or allege any other trial errors. For the following reasons, I will deny this motion.

Federal Rule of Civil Procedure 59(a) sets forth the grounds on which I may grant a motion for a new trial:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

FED.R.CIV.P. 59(a).

A new trial is appropriate only when the verdict is contrary to the great weight of the evidence or errors at trial produce a result inconsistent with substantial justice. Roebuck v. Drexel Univ., 852 F.2d 715, 735-36 (3d Cir. 1988). When a party argues the jury's verdict is against the weight of the evidence, a new trial is proper only when the record shows the jury's verdict resulted in a miscarriage of justice or where the verdict cries out to be overturned, or shocks the conscience. Greenleaf v. Garlock, Inc., 174 F.3d 352, 366 (3d Cir. 1999) (quoting Williamson v. Conrail, 926 F.2d 1344, 1353 (3d Cir. 1991)). I may not substitute my credibility determinations for those of the jury. Williamson, 926 F.2d at 1353.

With this standard in mind, I consider the record. Over the years, the relationship

between the Hospital's management and non-management employees became tumultuous. Balatgek testified Olree told him in 2001 to secretly tape record conversations of the engineering department employees, which included plaintiffs, to identify problem employees. (N.T. 4/12/06 at 41, 45-50). The day after the first taping, Balatgek gave the tape to Michael Forbes, the Hospital's assistant director of facilities management, and told him he had found it in his in-box. Id. at 51, 54. Balatgek and Forbes recounted the story to Olree. (N.T. 4/13/06 at 189-90). Olree testified the three then brought the tape to Richard Mable, the Hospital's vice president of planning, who said "under no circumstances would [audio] taping be permitted at Hospital's premises." (N.T. 4/13/06 at 189-191). Olree unequivocally denied ordering the tape recording. Balatgek testified no member of the Hospital's management ever told him audio taping was not permitted, nor was he disciplined in any manner as a result of making the 2001 tape. (N.T. 4/12/06 at 54). Mable testified he kept the tape for a week or two then destroyed it without listening to its contents. (N.T. 4/11/06 at 7). Neither Mable nor any other Hospital official issued any hospital-wide policy or memorandum condemning the incident or warning against illegal electronic interceptions.

      Meanwhile, the Hospital arranged a meeting on January 22, 2002, with the employees of the engineering department and Susan McKeone, a labor-management consultant, to provide the workers a forum to discuss workplace concerns and to voice their reaction to changes in the workplace. McKeone promised employees she would collect information anonymously and present a report to Hospital officials in an effort to mend the troubled relationship. (N.T. 4/11/06 at 48; 4/12/06 at 190-94, 204-5; 4/13/06 at 44,61, 126-28; 4/17/06 at 15-18, 101, 106-14; 4/18/06 at 89-09, 95-97). The employees were repeatedly assured of confidentiality and urged to be

candid with the outside consultant.

After the meeting with the consultant, plaintiffs discovered a tape recorder in Balatgek's locker and notified Hospital management. Balatgek admitted he had set up the tape recorder to secretly tape the meeting, and that he had acted under orders from Olree. After he was suspended, Balatgek resigned to avoid termination. (N.T. 4/11/06 at 82-85; 4/17/06 at 119, 124-25, 180-82; 4/18/06 at 155).

The Hospital contends plaintiffs focused at trial on the theory that by following Olree's orders, Balatgek acted within the scope of his employment to impart vicarious liability to the Hospital. Thus, the Hospital adds, when the jury exonerated Olree, the scheme's alleged architect, it removed the "linchpin," see Movant's Reply Brief at 2, which held together plaintiffs's theory of vicarious liability against the Hospital. I disagree.

I instructed the jury, without the Hospital's objection,[5] it could impose vicarious liability on the Hospital not only if it found Balatgek was acting within the scope of his authority, but also if he acted beyond the scope of his authority if his actions were subsequently ratified by the Hospital.[6] I also instructed the jury on other scenarios under which it could impose liability on the Hospital if it found Balatgek's conduct was within the scope of his actual or apparent authority, and explained how this basis for imposing vicarious liability arises from the fact of

---

[5] Both in my instructions to the jury and the verdict slip, the jury was told to consider the evidence of liability against the Hospital and Olree separately. (N.T. 4/19/06 at 16, 24).

[6] The exact instruction follows: "If you find that Mark Balatgek and/or other employees of Defendant Reading Hospital acted without authority or beyond the scope of their agency or authority, but find also that those acts were subsequently ratified by Defendant Reading Hospital, either expressly or by accepting and retaining the benefits of such acts, you may find Defendant Reading Hospital bound by and liable for such acts."

Balatgek's employment with the Hospital and its inherent right to control the manner in which he performed his services on its behalf. It is assumed juries act in accordance with the instructions given them, and do not consider and base their decisions on legal questions with respect to which they are not charged. Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 604 (1985).

Contrary to defendant's premise, the jury could have credited Balatgek's entire testimony, including Olree's alleged taping directive, and still exonerated Olree.[7] Olree's exoneration does not necessarily equate to the jury's rejection of Balatgek's testimony. Olree's alleged direction ordering the taping is sufficient evidence to show Balatgek's recording of the confidential meeting was authorized, expressly or impliedly, by the Hospital. The Hospital stipulated Olree, Forbes, and Mable acted within the scope of their employment with the Hospital. (N.T. 4/18/06 at 168).

Balatgek testified no member of the Hospital's management ever told him audio taping was not permitted, nor was he disciplined in any manner following discovery of the 2001 tape. (N.T. 4/12/06 at 54). Additionally, no investigation was conducted by the Hospital to ascertain who made the tape or what, if anything, was contained on the 2001 tape. (N.T. 4/17/06 at 90-92; 4/13/06 at 189-192). At trial, the Hospital stipulated "there was no policy on taping in place by the Hospital, prior to, and on, January 22, 2002." (N.T. 4/18/06 at 167). This lack of

---

[7] For example, I gave the following instruction without objection: "Although there are two defendants in this case, it does not follow that if one is liable, the other is also liable. Both defendants are entitled to fair, separate, and individual consideration of the case without regard to your decision as to the other defendant. If you find that only one defendant is responsible, then you may impose damages only upon that defendant." The Hospital did not object to this instruction or contend its liability was contingent on Olree's liability.

investigation and the Hospital's failure to implement a remedial policy to prevent future problems or condemn illegal taping is sufficient to support a jury determination that the Hospital had minimal or no interest in aggressively pursuing this issue. Further, there was sufficient evidence for the jury to conclude the Hospital was on notice in 2001 that Balatgek was involved in discovery of a recording which the Hospital acknowledged at trial was improper. Balatgek worked in a supervisory role at the Hospital, which had a right to control the manner in which he performed his duties.

The Hospital's reliance on <u>Greenleaf</u>, 174 F.3d at 356, is misplaced. Greenleaf filed a strict liability asbestos products liability action against ten defendants including Owens and Garlock, all manufacturers of asbestos products. <u>Id.</u> Owens and Garlock were the only defendants who appeared and participated at trial. The jury found Owens and Garlock liable but exonerated the other defendants. <u>Id.</u> at 356. The district court denied a Rule 59 motion for a new trial. On appeal, the court said while the jury was not required to credit all of the uncontroverted evidence, the jury found Garlock and Owens liable on virtually identical evidence and in the face of a rigorous defense. The court reversed and remanded for a new trial:

> Given the evidence that the jury must have credited in returning the verdicts against Garlock and Owens, we can find no rational explanation for the jury's failure to find the non-appearing defendants liable as well. It may well be that the jury is reluctant to judge them liable without hearing their side of the story. But whatever may have been the reason for the verdict in favor of the non-appearing defendants, we are left with the definite and firm conviction that a mistake has been made and that a new trial on the cross-claims is necessary to prevent a miscarriage of justice.

<u>Id.</u> at 367.

Here, however, the jury could have found that the Hospital's failure to aggressively

respond to the 2001 taping incident involving one of its managers made it liable when a second incident was uncovered on January 22, 2002. Similarly, although Olree was not found liable, the jury could have used against the Hospital Balatgek's testimony on Olree's directive. For example, the jury could have concluded that although Olree directed the taping, only the institutional defendant, and not any individual, should be held legally accountable for the violation. This conclusion is rational especially in light of the tumultuous labor relationship between the Hospital, as an entity, and the plaintiffs. There was no evidence that Olree, as an individual, was the sole antagonist in plaintiffs' ongoing employment disputes with the Hospital. Moreover, the jury's verdict is rational in light of the Hospital's failure in 2001 to implement a clear hospital-wide policy against illegal electronic interceptions. The Hospital's lack of management training and its failure to fully investigate the illegal tapings constitute sufficient evidence to distinguish the jury's split verdict from the decision in Greenleaf.

Defendant's claim appears to suggest the jury's split verdict, exonerating Olree but finding the Hospital liable, constitutes an inconsistent verdict meriting a new trial. Generally, civil juries must return consistent verdicts and courts should strive to reconcile apparently inconsistent verdicts. See Deloughery v. City of Chicago, 422 F.3d 611, 617 (7th Cir. 2005); but see Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000) ("Inconsistent jury verdicts are an unfortunate fact of life in law, and should not, in and of themselves, be used to overturn otherwise valid verdicts"). Thus, as the court appears to have determined in Greenleaf, 174 F.3d at 367, a new trial may not be granted based on an inconsistent verdict "'unless no rational jury could have brought back' the verdicts that were returned." Deloughery, 422 F.3d at 617 (quoting Will v. Comprehensive Accounting Corp., 776

F.2d 665, 677 (7th Cir. 1985)).

    The Hospital's position appears to find some support in City of Los Angeles v. Heller, 475 U.S. 796, 797-99 (1986).  In Heller, the court held a birfurcated trial on plaintiff's civil rights claims under 42 U.S.C. § 1983 alleging constitutional violations by the city, members of its police commission, and individual police officers.  Id. at 797-98.  A jury returned a verdict for an individual police officer, finding Heller failed to prove he was arrested without reasonable cause or with unreasonable force.  As a result, the trial court dismissed all claims against other defendants concluding "if the police officer has been exonerated by the jury there could be no basis for assertion of liability against the city or the persons constituting its Police Commission."  Id. at 798.  The Court affirmed the dismissal, noting that the city and commission were sued only because "they were thought legally responsible" for the officer's actions.  Id. at 799.  As a result, the Court explained, if the officer "inflicted no constitutional injury on respondent, it is inconceivable that petitioners could be liable to respondent."  Id.

    Heller, however, is not dispositive.  First, the decision in Heller is based on collateral estoppel grounds and was not rendered in the context of overturning a jury verdict based on internal inconsistencies in the verdict.  Second, unlike Heller, Olree's liability was not a prerequisite to the Hospital's liability.  To be sure, the Hospital acts only through its agents, such as Olree.  Yet, the jury was permitted to credit Balatgek's testimony in finding the Hospital liable, but at the same time decide that Olree should not be individually liable.  The jury could have had any number of reasons for reaching such a conclusion, e.g., a belief that Olree was merely trying to serve his employer through a misguided desire to restore labor peace, that Olree's actions would benefit only the Hospital and not him individually, or that the Hospital had

9

a greater obligation to take affirmative steps to address the issue of illegal taping.

In any event, in certain circumstances, courts retain authority to allow an apparently inconsistent verdict to stand.  See Heller, 475 U.S. at 806 & n.12 (Stevens, J., dissenting).  One such circumstance is jury compromise.  See, e.g. Montgomery County v. Microvote Corp., 320 F.3d 440, 451 n.5 (3d Cir. 2003) (affirming "apparently inconsistent verdict" resulting from "compromise"); Mosley v. Wilson, 102 F.3d 85, 90-91 (3d Cir. 1996) (consistent jury verdicts are not, in themselves, necessary attributes of a valid judgment; acknowledging the validity of compromise verdicts); see also Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020,1035-36 (9th Cir. 2003) (citing International Longshoremen's Union v. Hawaiian Pineapple Co., 226 F.2d 875, 881 (9th Cir. 1955) (compromise verdict holding union liable but exonerating individual defendants upheld despite its legal inconsistency)).  When confronted with close questions such as this one, juries may rely on their sense of overall fairness to reach an obvious compromise.  Thus, a verdict exonerating a servant, but against the master, may stand as long as the evidence is sufficient to support liability of the master.  See Heller, 475 U.S. at 806 n.12.  Here, there was sufficient evidence to support the jury verdict against the Hospital.  Following uncontested legal instructions, the jury could have either credited Balatgek's testimony of Olree's directive, or found Balatgek's actions as a manager were later ratified by the Hospital through its failure to take remedial action.  I cannot substitute my credibility finding for the jury's.  See Williamson, 926 F.2d at 1353.  Therefore, I decline to exercise my discretion to order a new trial.

The Hospital also requests, in the alternative, that I amend the award of statutory damages to zero or substantially reduce the award.  It cites the decisions of various courts which have held a court has discretion to award less than $10,000 in statutory damages under the federal statute.

See, e.g., DirecTV, Inc. v. Brown, 371 F.3d 814, 817-18 (11th Cir. 2004); Nalley v. Nalley, 53 F.3d 649, 652 (4th Cir. 1995); DirecTV, Inc. v. Chorba, 2005 U.S. Dist. LEXIS 31037 (M.D. Pa. November 18, 2005).  The Hospital proposes a list of factors I should apply in reducing the award, including the absence of:  evidence of actual damages, financial loss, career harm to plaintiffs, emotional distress, any disclosure of the contents of the tapes; and the Hospital's prompt destruction of the tapes.

     None of these factors are dispositive in the unique context of this case.  At the time of the illegal taping, there had been an escalating tumultuous relationship between labor and management at the Hospital.  A series of confidential employee meetings with an outside management consultant was marketed as the Hospital's effort to improve employee relations.  Plaintiffs were repeatedly guaranteed confidentiality both by the Hospital's management and by the consultant.  Plaintiffs relied on those guarantees and actively participated in the meeting based on the Hospital's assurance.  Rather than achieving the anticipated result, the discovery of the tape and subsequent disclosures of an earlier taping incident, resulted in enhanced mistrust in management and further labor tension in the workplace.

     Moreover, enforcement of the state and federal laws prohibiting electronic interception depends to a large extent on the willingness of victims to assert their rights.  Plaintiffs, who were earning modest wages, enlisted legal counsel to seek enforcement of state and federal law.  Reducing a $70,000 damage award – a modest amount for an institutional defendant of significant net worth – would discourage similarly situated plaintiffs from alleging violations.  This, of course, would inhibit enforcement of state and federal laws enacted to discourage illegal electronic intercepts.

Under all of these circumstances, and in light of all of the trial testimony, I decline to reduce the award of $10,000 in statutory damages to each plaintiff.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAROLD CARE, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | No. 03-CV-4121 |
| | : | |
| THE READING HOSPITAL AND | : | |
| MEDICAL CENTER, INC., et al., | : | |
| Defendants | : | |

**O R D E R**

**RICE, M.J.**

    **AND NOW,** this 31st day of August, 2006, upon consideration of defendant's motion for new trial (Document #108), and plaintiffs' response thereto (Document #125), IT IS HEREBY ORDERED that:

1. Defendant's motion for leave to file reply brief (Document #126) is GRANTED;

2. Defendant's motion for new trial (Document # 108) is DENIED;  and
3. Within ten (10) days, plaintiffs shall submit a fee petition.  The parties are encouraged to confer and attempt to resolve any objections, as suggested in Hensley, et al. v. Eckerhart, et al., 461 U.S. 424, 437 (1983) (ideally litigants should settle amount of fee).  If the fee issues cannot be resolved informally, defendant is granted five (5) days from the date of plaintiffs' filing to respond to plaintiffs' petition.

    BY THE COURT:

\s\ TIMOTHY R. RICE
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE